NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAINBOW APPAREL, INC., *et al*, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 9-CV-05319 (DMC-MF) |
| KCC TRADING, INC., *et al*, | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before this Court upon motion by KCC Trading, Inc., Won Bok Choi, Misuk Choi and Ji Hae Choi a/k/a Vanessa Choi (collectively, "Defendants")[1] to transfer venue, upon motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and upon motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, and based upon the following, it is the decision of this Court that Defendants' motions are **granted in part** and **denied in part**.

I.    BACKGROUND

On September 8, 2009, Rainbow Apparel, Inc. and Peter Kim ("Plaintiffs") filed a Complaint in the Superior Court of New Jersey, Hudson County, Law Division. On October 16, 2009, pursuant to 28 U.S.C. § 1446, Defendants removed this action to federal court on the basis of diversity

---

[1] The remaining, non-moving Defendants include Thomas Hill Vina Co., Ltd, Thomas Hill USA Co., Inc. and Kyung Ho Kim a/k/a Kevin Kim.

jurisdiction. 28 U.S.C. § 1332(a).  Defendants filed a motion to transfer on November 3, 2009.  In lieu of a responsive pleading, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on November 4, 2009.  Thereafter, on January 4, 2010, Defendants filed a separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). On November 24, 2009, Plaintiffs filed an opposition to Defendants' motion to dismiss for failure to state a claim as well as a cross-motion to amend the Complaint.  On February 12, 2010, Plaintiffs' cross-motion to amend the Complaint was denied without prejudice by the Honorable Mark Falk, U.S.M.J.[2]

The Complaint asserts that on March 11, 2006, Plaintiff Peter Kim ("Plaintiff Kim"), a shareholder and officer of Rainbow Apparel, Inc. ("Rainbow"), traveled to Vietnam for business. (Plaintiffs' Complaint ("Pl. Compl."), ¶¶ 9, 13). In Vietnam, Plaintiff Kim visited the factory of Thomas Hill Vina where he met with Kevin Kim who is alleged to be the principal shareholder and officer of Thomas Hill Vina and who operated the factory with Steven Choi. (Pl. Compl., ¶ 13). Kevin Kim and Steven Choi allegedly requested that Plaintiff Kim procure business for Thomas Hill Vina through Plaintiff Kim's business contacts in the apparel industry, including Jones Apparel Group and G-iii. (Pl. Compl., ¶14). Upon Plaintiff Kim's return to the United States, Won Bok Choi, the principal shareholder and officer of KCC Trading, Inc. ("KCC"), Thomas Hill Vina Co., Ltd. ("Thomas Hill Vina") and Thomas Hill USA Co., Inc. ("Thomas Hill USA"), allegedly contacted Plaintiff repeatedly for the purpose of connecting with Plaintiff's business contacts in the apparel industry. (Pl. Compl., ¶¶ 6, 16).

Upon the request of Won Bok Choi, the Complaint alleges that, in July 2006, Plaintiff Kim

---

[2]

Pursuant to this Order, Plaintiffs were granted leave to file a motion to amend following this Court's determination of the dispositive motions pending before this Court.

attended a meeting with Won Bok Choi.  As a result of this meeting, the Complaint alleges that a joint business venture arose between the parties.  Pursuant to this business venture, Plaintiffs' Complaint asserts that "1) Plaintiff Peter Kim would use his valuable and substantial business contacts to solicit business from Jones Apparel group and Giii [sic]; 2) Rainbow would handle sales, production of samples, repair work, and all export/import matters; 3) Thomas Hill Vina would handle the production of apparel; and, 4) KCC would handle all financing for the venture." (Pl. Compl., ¶ 18).  The Complaint asserts that Won Bok Choi further represented that, in support of the joint business venture, he would provide up to $30 million dollars in financing and, it was also agreed that KCC would advance all costs and expenses, collect all payments and revenue and distribute all profits. Additionally, Rainbow would be reimbursed for all expenses for sample making and production and payroll.  (Pl. Compl., ¶¶ 19, 21) According to the Complaint, all profits would then be divided 50/50 between Rainbow and KCC. (Pl. Compl., ¶ 21).  The Complaint alleges that KCC represented that it would acquire a separate business account for the purposes of this joint business venture and in order to avoid the commingling of funds.  (Pl. Compl., ¶ 22).  The Complaint also alleges that in July 2007, Won Bok Choi represented that he would transfer a 33% interest in Thomas Hill Vina to Rainbow and $100,000 in consideration of the time and money expended by Plaintiffs. (Pl. Compl., ¶ 24).

Between January 2007 and December 2007, the Complaint alleges that Plaintiffs exercised their business contacts, in accordance with the terms of the business venture agreement, and successfully persuaded companies such as Jones Apparel Group and G-iii to use the Thomas Hill Vina factory.  (Pl. Compl., ¶ 26).  Plaintiffs further operated on behalf of Thomas Hill Vina by filling and shipping purchase orders in late 2007 and early 2008.  (Pl. Compl., ¶ 26).  When Plaintiffs

3

approached Defendants to request their share of the profits, Defendants refused to pay and represented that the business venture was in fact losing money. (Pl. Compl., ¶ 27). At such time, Won Bok Choi further indicated that KCC was unable to provide the same funding previously advanced to Rainbow (approximately $3 million) and, eventually, KCC discontinued payment for Rainbow's costs and expenses. (Pl. Compl., ¶ 28). As a consequence, Plaintiffs were forced to advance their own money to cover the costs of production. (Pl. Compl., ¶ 28). In April of 2009, Plaintiffs learned that Defendants Won Bok Choi and Misuk Choi had advised Plaintiffs' business contacts, Jones Apparel Group and G-iii, that Plaintiffs were no longer a part of the business venture and that all orders should be submitted directly to KCC. (Pl. Compl., ¶ 30). As a result, the Complaint alleges, Jones Apparel Group and G-iii stopped issuing orders to Plaintiffs. (Pl. Compl., ¶ 30). The Complaint further alleges that, in an attempt to conceal and destroy financial information relevant to the joint business venture agreement, Vanessa Choi removed from Rainbow's premises business records, including trade secrets, and a laptop computer containing financial data related to the venture. (Pl. Compl. ¶ 29).

## II.   STANDARD OF REVIEW

### A.   Motion to Transfer

Pursuant to Section 1404, "a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. "A court may do so only if the transfer is 'in the interest of justice' and '[f]or the convenience of parties.' Id. "Transfer is only appropriate when the proposed venue is one in which the action might have originally been brought." Green v. Equifax Info., LLC, 2010 U.S. Dist. LEXIS 41485, *4 (D.N.J. Apr. 28, 2010). "Thus, the Court must make an initial determination that venue would lie in the proposed forum." Id. Pursuant

to 28 U.S.C. § 1391, "venue is proper 'in a judicial district where any defendant resides if all defendants reside in the same State [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.'" Although the decision to transfer to an appropriate forum is within the Court's discretion, "it is not liberally granted." Green, 2010 U.S. Dist. LEXIS at *4 (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)).

B.      Motion to Dismiss for Failure to State a Claim

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).   "While a complaint attacked  by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly,  550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).   "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)."  Bell at 555-56.

C.      Motion to Dismiss for Lack of Personal Jurisdiction

A federal court sitting in diversity conducts a two-step analysis in determining whether personal jurisdiction exists. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the

5

exercise of personal jurisdiction would be repugnant to the Due Process Clause of the Fourteenth Amendment. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996).

## III.   DISCUSSION

### A.   Motion to Transfer

Courts balance private and public interests in deciding whether to transfer venue under 28 U.S.C. § 1404. "Private interests include a plaintiff's choice of forum, a defendant's preference, whether the claim arose elsewhere, convenience of the parties as indicated by their physical and financial condition, convenience of the witnesses to the extent that they may be unavailable in one forum, and the location of books and records to the extent they could not be produced in alternative fora." Green, 2010 U.S. Dist. LEXIS at *5; see Yocham v. Novartis Pharms. Corp., 565 F. Supp. 2d 554, 557 (D.N.J. 2008). Public interests include "enforceability of a judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court congestion, local interest in deciding a local controversy, public policies of the fora, and familiarity of the district court with applicable state law." Id. (citing Jumara v. State Farm Ins., Co., 55 F.3d 873, 883 (3d Cir. 1995)).

"The party moving to transfer has the burden of persuasion." Market Transition Facility v. Twena, 941 F. Supp. 462, 467 (D.N.J. 1996)(citing Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 609 (3d Cir. 1991)). "In deciding transfers under § 1404, courts generally assign the plaintiff's choice of forum significant weight." Id. "A court will not grant a transfer simply because the transferee court is more convenient for the defendants. . . . If the transfer would merely switch

6

the inconvenience from defendant to plaintiff, the transfer should not be allowed." Id.

Although Defendants acknowledge that Plaintiffs' forum selection is generally entitled to some preference, Defendants contend that where the central facts of the lawsuit arise outside the forum state, less deference is afforded to Plaintiff's selection. Further, Defendants assert that all named Defendants reside or do business in New York and that potential non-party witnesses, including Jones Apparel Group and G-iii, reside or do business in New York. Defendants assert that Plaintiffs' contacts with New York State are sufficient to confer personal jurisdiction over Plaintiffs and that the proximity between locations will not inconvenience Plaintiffs. Additionally, Defendants contend that to the extent a business arrangement arose between the parties, such an arrangement was the product of meetings conducted in New York. Defendants point out that the purpose of the underlying business arrangement alleged in the Complaint was to secure to dealings with New York corporations. With respect to the public interest factors, Defendants contend that a judgment would be enforceable in New York State, that New York is more convenient for purposes of administering the action and that New York is a location common to six of seven Defendants as well as non-corporate entities, including the respective business records and accounts of each. Defendants also assert that New York has a policy interest in adjudicating this matter because the underlying issues are subject to New York State Law.

By contrast, Plaintiffs contend that the conduct underlying the allegations asserted in the Complaint occurred in New Jersey. According to Plaintiffs, the alleged contract formation, breach of contract, fraudulent misrepresentation, breach of fiduciary duty, purported theft of Plaintiffs' computer and business records all occurred in New Jersey. Furthermore, Plaintiffs assert that the day-to-day business operations took place in the New Jersey office, including import/export matters,

marketing and sales decisions, and garment and sample production. Additionally, one of the named Defendants, Vanessa Choi, worked in Plaintiffs' New Jersey office for a over a year. Plaintiffs indicate that at least three non-party witnesses from Jones Apparel Group and G-iii reside in New Jersey and further, Plaintiffs assert that all non-party witnesses are subject to this Court's subpoena power pursuant to Fed. R. Civ. P. 45.[3]

New Jersey has a substantial nexus to the underlying conduct alleged. Despite Defendants assertion that the conduct alleged in the Complaint arose in New York, Plaintiffs underscore specific instances and particular operations that took place in the Jersey City, New Jersey office. As a result of this nexus, Plaintiff's forum selection is afforded substantial deference. Additionally, the change in venue merely shifts the inconvenience to Plaintiffs and the non-party witnesses who reside in New Jersey. Therefore, Defendants' motion to transfer is **denied.**

B.      Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Counts I-III, Counts VI-VII, in part Count VIII and Counts X-XI of Plaintiffs' Complaint. As a threshold matter, the Court must resolve the parties dispute concerning applicable law in the instant matter.

---

[3]

(2) *Service in the United States.* Subject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place:
(A) within the district of the issuing court;
(B) outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;
(C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or
(D) that the court authorizes on motion and for good cause, if a federal statute so provides.

Fed. R. Civ. P. 45.

1.      Choice-of-Law

Defendants assert that New York State Law is the applicable law in this matter.  Plaintiffs assert that the forum choice-of-law rules require the application of New Jersey State Law in the instant matter.  In a diversity action, the forum state's choice-of-law rules apply.  Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 96 F.2d 377, 379 (3d Cir. 1992) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  "Under New Jersey law, choice-of-law determinations involve a two-step inquiry.  In the first step, a determination is made as to whether or not an actual conflict exists between the substance of the laws of each respective potential forum."  Cooper v. Samsung Elecs. Am. Inc., 2010 U.S. App. LEXIS 2010, *9 (3d Cir. Mar. 30, 2010) (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  "If no actual conflict is found to exist, 'the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same.'"  Id. (citing Lebegern, 471 at 428).  "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step."  Id. The second step requires application of the "most significant relationship" test.  Id. "In November 2008, the New Jersey Supreme Court adopted the 'most significant relationship' test, as found in the Restatement (Second) of Conflict of Laws."  Id. (quoting P.V. v. Camp. Jaycee, 197 N.J. 132 (N.J. 2008)).  This test "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration."  Id.   "If the various state laws are materially different, however, the Court must weigh the considerations contained in the Restatement and determine which state has the 'most significant relationship' to each cause of action asserted in the suit."  In re Mercedes-Benz Tele Aid Contract Litig., 2010 U.S. Dist. LEXIS 23624, *16 (D.N.J. Mar. 15, 2010).  In doing so, the Court must consider two sets of factors: (1) the general considerations articulated in § 6, and (2) those

9

specific to each claim.[4]

                                 a.        Count I - Fraud

Pursuant to New Jersey State Law, "proof of common law fraud requires the satisfaction of five elements: a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 174 (2006). New York State Law applies the same "essential elements of a cause of action for common-law fraud[,] includ[ing] the representation of a material existing fact, falsity, scienter, reliance and injury." Albert Apt. Corp. v. Corbo Co., 582 N.Y.S.2d 409, 410 (App. Div. 1992). In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count I of the Complaint.

---

    4

Restatement (Second) conflicts of Law (1971), § 6 Choice-Of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    © the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

b.      Count II and Count VIII - Breach of Contract

To state a claim for breach of contract, Plaintiff must allege "(1) a contract exists between the parties; (2) the defendant breached that contract; (3) the plaintiff suffered damages as a result of the breach; and (4) the plaintiff 'performed its own contractual obligations.'" Frederico v. Home Depot, 507 F.3d 188; Tumi, Inc. v. Excelcorp., 2005 U.S. Dist. LEXIS 16027, *7-8 (Aug. 1, 2005) (applying New Jersey State Law to a breach of contract claim).  New York State Law applies the same elements. See Clearmont Prop. LLC v. Eisner, 58 A.D.3d 1052, 1055 (App. Div. 3d Dept 2009) (citing Hecht v. Components Intl., Inc., 22 Misc 3d 360, 364 (2008)).    In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count II of the Complaint.

c.      Count III - Accounting

An accounting is an equitable remedy available in both New Jersey and New York under the appropriate circumstances.  Jarwick Devs. Inc. v. Wilf, 2006 N.J. Super. Unpub. LEXIS 2221, *15 (App. Div. Dec. 15, 2006) (citing Savage v. Dowrie, 111 N.J. Eq. 108, 109-110 (Ch. Div. 1932)); see also Notch View Associates v. Smith, 260 N.J. Super. 190, 201 (App. Div. 1992); see Bouley v. Bouley, 797 N.Y.S.2d 221, 224 (N.Y. App. Div. 2005) ("The basis for an equitable action for [an] accounting is the existence of a fiduciary or trust relationship respecting the subject matter of the controversy . . . . The fiduciary relationship necessary to obtain an accounting is created by the plaintiff entrusting to the defendant some money or property with respect to which the defendant is bound to reveal his dealings."). see Transtech Indus. v. Certain Underwriters, 2009 N.J. Super. Unpub. LEXIS 3167, *4 (App. Div. July 21, 2009). In New Jersey, "[t]he equitable jurisdiction to

11

compel an account, rests upon three grounds -- first, the existence of a fiduciary or trust relation; second, the complicated character of the accounts; and third, the need of discovery." <u>Burdick v. Grimshaw</u>, 113 N.J. Eq. 591, 603 (1933); <u>see</u> <u>Onderdonk v. Presbyterian Homes of New Jersey</u>, 85 N.J. 171 (1981).  "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is [ ] the absence of an adequate remedy at law. " <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 478 (1962).  "Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them."  <u>Id</u>.  Therefore, although not necessarily promulgated by New York State Law, the three elements articulated under New Jersey State Law are inherent in any action for an accounting as indicated by the United States Supreme Court in <u>Dairy Queen</u>.  In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count III of the Complaint.

d.      Count IV - Conversion

"Conversion is the intentional exercise of dominion or control over personal property that seriously interferes with the right of another to control it." <u>Pollen v. Comer</u>, 2007 U.S. Dist. LEXIS 46906, * 31 (D.N.J. June 28, 2007) (citing <u>Mueller v. Tech. Devices Corp.</u>, 8 N.J. 201, 207 (1951)); <u>see also</u> Restatement (Second) of Torts § 222A1. "To prove a claim for conversion, a plaintiff must prove '(1) that the alleged offender assumed and exercised the right of ownership over the party's goods or chattels without permission, and (2) excluded the owner from exercising dominion over them.'" <u>Id</u>. (citing <u>Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.</u>, 275 F. Supp. 2d 543, 576 (D.N.J.  2003) <u>aff'd</u>, 342 F.2d 191 (3d Cir. 2003); <u>see</u> <u>Barco Auto Leasing Corp. v. Holt</u>, 228 N.J.

Super. 77, 83 (App. Div. 1988). In New York State, the "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property [ ] and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 50 (N.Y. 2006). In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count IV of the Complaint.

### e.      Count V - Unjust Enrichment

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 526 (1994) (citing Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986) (The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.). In New York, "to prove an unjust enrichment claim[,] more is required than simply showing that one party received a benefit (see, Restatement [Second] of Restitution § 1, comment c)[.] [T]he enrichment must be such that in equity and good conscience its retention would be unjust." Mayer v. Bishop, 551 N.Y.S.2d 673 (N.Y. App. Div. 1990). In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count V of the Complaint.

### f.      Count VI - Breach of Fiduciary Duty

Under New Jersey law, a confidential or fiduciary relationship encompasses all relationships "whether legal, natural or conventional in their origin, in which confidence is naturally inspired, or

in fact, reasonably exists." Alexander v. CIGNA Corp., 991 F. Supp. 427, 437 (D.N.J. 1998)

(quoting Pascale v. Pascale, 113 N.J. 20, 33-34 (1988)).   "The essentials of a confidential

relationship 'are a reposed confidence and the dominant and controlling position' asserted by one

side or party such that circumstances make it certain that the parties do not deal on equal terms."

Id. (quoting In re Stroming's Will, 12 N.J. Super. 217, 224 (App. Div. 1951)); see People v.

Coventry First, LLC, 2009 NY Slip Op 5368 (2009)(quoting EBC I Inc. v. Goldman Sachs & Co.,

5 N.Y.3d 11, 19 (2005)).   "In short, such a relationship 'does not exist where the parties deal on

terms of equality[.]'" Id. (internal citation omitted).   A claim for breach of fiduciary duty requires

the Plaintiff to establish (1) a fiduciary duty, (2) breach of that duty by defendant and (3) damages

as a consequence of that breach.   See In re Estate of Lash, 169 N.J. 20, 27-29 (2001); see Whitney

v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986). In the absence of a material difference in the

respective laws of each state, New Jersey State Law governs with respect to Count VI of the

Complaint.

g.     Count VII - Interference with Contract

"New Jersey and New York law on tortious interference with an existing contract are in

accord." Marks v. Struble, 347 F. Supp. 2d 136 (D.N.J. 2004).   With respect to New Jersey State

Law, a claim for tortious interference must allege: (1) the existence of the contract (or the

prospective economic relationship); (2) interference which was intentional and with malice; (3) the

loss of the contract or prospective gain as a result of the interference; and (4) damages. Velop, Inc.

v. Kaplan, 301 N.J. Super 32 (App. Div. 1997); see Digorgio Corp. v. Mendez & Co., Inc., 230 F.

Supp. 2d 552, 557-58 (D.N.J. 2002).   In New York, "[t]he required elements of a cause of action for

tortious interference with prospective business relations are as follows: (a) business relations with

14

a third party; (b) the defendant's interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship." <u>Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.</u>, 2007 NY Slip Op 27107 (N.Y. Sup. Ct. Mar. 8, 2007); <u>see</u> <u>Carvel Corp. v. Noonan</u>, 3 N.Y.3d 182 (2004); <u>see</u> <u>Guard-Life Corp. v. Parker Hardware Mfg. Corp.</u>, 50 N.Y.2d 183 (1980). In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count VII of the Complaint.

h.      Count VIII and Count IX - Quantum Meruit

"To recover under a theory of quantum meruit, a plaintiff must establish (1) performance of services in good faith, (2) acceptance of the services by the person to whom rendered, (3) an expectation of compensation by the person performing the services, and (4) the reasonable value of the services. The recovery rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." <u>Carney v. Hansell</u>, 363 N.J. Super. 111, 123 (N.J. Super. Ct. Ch. Div. 2003) (citing <u>Starkey v. Estate of Nicolaysen</u>, 172 N.J. 60 (2002); <u>Weichert Co. Realtors v. Ryan</u>, 128 N.J. 427, 437 (1992)); <u>Longo v. Shore & Reich, Ltd.</u>, 25 F.3d 94, 98 (2d Cir. 1994); <u>Reisner v. Recco Temporary Services, Inc.</u>, 524 N.Y.S.2d 102, 103 (N.Y. App. Div. 1988). In the absence of a material difference in the respective laws of each state, New Jersey State Law governs with respect to Count VIII and IX of the Complaint.[5]

---

[5]Counts X and XI merely reassert the foregoing counts in the Complaint against John Does and fictitious corporations.  Therefore, analysis and comparison of substantive law is not required with respect to these counts.

15

2.      Application of Substantive Law

a.      Count I - Fraud

Defendants move to dismiss Count I of Plaintiff's Complaint for failure to plead with particularity in accordance with Fed. R. Civ. P. 9.  Alternatively, Defendants move to dismiss Count I of Plaintiffs' Complaint because Defendants allege that the claim for fraud arises out of the same facts as the claim for breach of contract. By contrast, Plaintiffs assert that the claim has been pled with particularity in accordance with Fed. R. Civ. P. 9, however, Plaintiffs do not appear to offer a response to Defendants' latter argument.

"Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. In determining the sufficiency of a complaint for purposes of Rule 9(b), after-the-fact allegations will not be considered.  Id.  "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 182 (3d Cir. 1988) (quoting Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984)). "Although the requirement that a party state the circumstances constituting fraud may be fulfilled by alleging the date, place, and time of the fraudulent behavior, the plaintiff is free to use alternative means to inject precision and substantiation into its allegations." Ford Motor Credit Co. v. Chiorazzo, 529 F. Supp.

535, 538-39 (D.N.J. 2008); see Seville Indus. Mach. Corp. v. Southmost Mech. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

Plaintiffs' Complaint alleges that Defendant Won Bok Choi represented at a meeting in July 2006 that he would provide up to $30 million dollars to finance a joint business venture between Plaintiffs and Defendants. (Pl. Compl., ¶¶ 18, 19). Pursuant to this business venture, the Complaint alleges that profits were to be shared by Rainbow and KCC on a 50/50 basis. In 2009, Plaintiffs' Complaint asserts that Defendants refused to pay in accordance with the terms of the agreement representing instead that the venture had resulted in debt; however, Plaintiffs allege that a subsequent review of Defendants' records revealed, to the contrary, that Defendants had profited substantially from the joint business venture. (Pl. Compl., ¶¶ 28, 31, 35).  The Complaint further alleges that Defendant KCC agreed to open a separate bank account to avoid commingling funds with other ongoing business ventures, but instead failed to open such an account and engaged in commingling. (Pl. Compl., ¶ 33). Additionally, the Complaint alleges that, in July 2007, Defendant Won Bok Choi represented that he would transfer $100,000 in cash and a 33% in Thomas Hill Vina to Rainbow in consideration of the time and money Plaintiffs had expended. (Pl. Compl., ¶ 24). Plaintiffs' Complaint further alleges scienter and detrimental reliance upon these alleged misrepresentations. (Pl. Compl., ¶¶ 28, 35-37).  Count I incorporates by reference the allegations contained in paragraphs 1-37 of the Complaint.  The Court finds that the Complaint is precise enough to support a claim for fraud consistent with the standard articulated in Fed. R. Civ. P. 9.  With respect to Defendants' first argument, the Court declines to dismiss Count I of Plaintiffs' Complaint.

Although premised on New York State Law, Defendants' second argument essentially seeks to preclude Plaintiffs' claim for fraud pursuant to what New Jersey recognizes as the economic loss

doctrine.  "The New Jersey Supreme Court first addressed the economic loss doctrine in Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 581-82 (1985), and has reaffirmed its commitment to the economic loss doctrine [ ] recently in Alloway v. General Marine Indus., L.P., 149 N.J. 620, 627 (1997)." Shan Indus., LLC v. Tyco Int'l (US), Inc., 2005 U.S. Dist. LEXIS 37983, *15 (D.N.J. Sep. 12, 2005).  "The economic loss doctrine is intended to enforce the boundaries of contract and tort law by precluding tort claims based on the same set of facts as those giving rise to a breach of contract claim; the doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" Id. (quoting Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1998)). "When analyzing the permissibility of fraud claims under the economic loss doctrine, New Jersey state and federal courts have drawn a distinction between allowable claims 'extrinsic to the contract,' such as those alleging 'fraud in the inducement' of a contract, and impermissible claims based upon a fraud in the performance of the contract." Id. (citing Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002)).  "The distinction between permissible 'fraud in the inducement' and impermissible 'fraud in the performance' claims has been illustrated thus:"

> The critical issue is whether the allegedly tortious conduct is extraneous to the contract. To harmonize this concept with defendants' argument, an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be. Illustrating with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud

Id. (citing Emerson Radio Corp. v. Orion Sales, Inc., 2000 U.S. Dist. LEXIS 487, at *22-23 (D.N.J. Jan. 10, 2000), aff'd in part, rev'd in part on other grounds, 253 F.3d 159 (3d Cir. 2001) (citations omitted)).

18

The general facts concerning Plaintiffs' fraud claim revolves around performance of the alleged terms of the oral contract.  Therefore, Defendants' motion is **granted** on this ground.  Count I of Plaintiffs' Complaint is **dismissed** pursuant to the economic loss doctrine.

b.       Count II and in part, Count VIII - Breach of Contract

Defendants move to dismiss Count II and in part, Count VIII of the Complaint because according to Defendants, the Complaint does not allege the existence of a written agreement, lacks a showing of mutual assent to the essential terms and fails to demonstrate with particularity the terms that were alleged and considered.  Further, Defendants assert that the parties' dealings did not constitute a joint venture.  Although Defendants rely on New York State Law, to the extent the Court finds an agreement to be in existence between the parties, Defendants contend that the agreement alleged  is barred by the statute of frauds.  By contrast, consistent with the requirements of a breach of contract claim under New Jersey State Law, Plaintiffs assert that the Complaint alleges the existence of a business venture agreement entered into in July 2006 (Pl. Compl., ¶¶ 18-21), subsequent performance by Plaintiffs (Pl. Compl., ¶¶ 24, 26), breach by Defendants (Pl. Compl., ¶¶ 27, 28, 41) and damages incurred by Plaintiffs as a consequence of that breach.  (Pl. Compl., ¶ 28).

A joint venture agreement will contain some or all of the following elements:

(A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;

(B) A joint property interest in the subject matter of the venture;

(C) A right of mutual control or management of the enterprise;

(D) Expectation of profit, or the presence of 'adventure,' as it is sometimes called;

(E) A right to participate in the profits;

19

(F) Most usually, limitation of the objective to a single undertaking or Ad hoc enterprise.

Lo Bosco v. Kure Eng'g, 891 F. Supp. 1020, 1027 (D.N.J. 1995) (citing Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962) (quoting Williston, *supra* § 318A, at pp. 563-65)). "The agreement, whether implied, explicit, or a combination of the two, will be interpreted and its validity tested under the normal rules of contract construction." Id.

New Jersey recognizes oral contracts. Hirsch v. Enright Refining Co., 751 F.2d 628, 630 (3d Cir. 1984); Leitner v. Braen, 51 N.J. Super. 31 (App. Div. 1958). "In a word, a contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance." Leitner, 51 N.J. Super. at 39. Pursuant to an amendment to the New Jersey Statute of Frauds, approved in 1996, the provision requiring a writing for "[a]n agreement that is not to be performed within one year from the making thereof" has been deleted. N.J.S.A. § 25:1-5; see 1995 N.J. ALS 360. Therefore, the Statute of Frauds is inapplicable to the instant matter.

At this stage, the Court's obligation is to determine whether Plaintiffs' Complaint is sufficient to state a claim for breach of contract. The Complaint alleges the existence of a business venture agreement as follows: 1) Plaintiff Peter Kim would use his valuable and substantial business contacts to solicit business from Jones Apparel Group and G-iii; 2) Rainbow would handle sales, production of samples, repair work, and all export/import matters; 3) Thomas Hill Vina would handle the production of apparel; and, 4) KCC would handle all financing for the venture. (Pl. Compl., ¶ 21). Further, the Complaint alleges that the agreement provided that profits would be shared on a 50/50 basis between KCC and Rainbow. In contrast to Defendants' argument, the Complaint sufficiently alleges essential terms and purports to establish mutual assent by alleging the parties subsequent

20

performance.  Further, the Complaint alleges that although Plaintiff Peter Kim used his contacts to acquire business for Thomas Hill Vina in accordance with the agreement, in breach of the agreement alleged, Defendants later failed to distribute profits accordingly.  (Pl. Compl., ¶¶ 26, 27).  Therefore, at this stage, the Court will not dismiss Plaintiffs' Complaint for failure to establish a joint business venture agreement or for failure to state a claim for breach of contract.  On this ground, Defendants' motion to dismiss is **denied.**

> c.      Count III - Accounting and Count VI - Breach of Fiduciary Duty

Defendants assert that, in the absence of a partnership or fiduciary relationship, Plaintiffs are not entitled to an accounting or any recovery whatsoever for breach of fiduciary duty; therefore, Defendants contend that Counts III and VI should be dismissed.  Plaintiffs, by contrast, assert that a fiduciary duty arises pursuant to a joint business venture, therefore, Plaintiffs' have asserted a viable claim sufficient to overcome a motion to dismiss.

"A joint adventurer owes no less a fiduciary duty to his co-adventurer than does one partner to the other." Silverstein v. Last, 156 N.J. Super. 145, 152 (App. Div. 1978). "As expressed in Bowne v. Windsor, 106 N.J. Eq. 415, 416 (Ch. Div. 1930), '[t]he relation of joint adventurers, like that of copartners, is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits.' That principle of law continues with undiminished vitality." Id. (internal citations omitted). "It is also a necessary corollary of this rule that the managing joint adventurer, like the managing copartner, has concomitantly the strictest possible obligation to a coadventurer since the mutual affairs are delegated to his supervision and control without expectation or anticipation by either of routine interference or monitoring on the part of the nonmanaging

venturer." [sic] Id.

Pursuant to New Jersey State Law, a fiduciary duty automatically arises from a joint business venture. Plaintiffs' Complaint sufficiently alleges the existence of a joint business venture. Therefore, on this ground, Defendants' motion to dismiss Count III and Count VI is **denied.**

> d.   Count VII - Interference with Contract/Prospective Economic Advantage

Defendants' assert that Plaintiffs' Complaint fails to allege the existence of a separate contract between Plaintiffs and a third party. Instead, Defendants contend that Plaintiffs' allegations concerning tortious interference arise from the same contract alleged to have been breached by Defendants. Therefore, Defendants assert that Plaintiffs claim for tortious interference must be dismissed. Plaintiffs, by contrast, assert that Defendants maliciously interfered with Plaintiffs' prospective economic advantage in destructing a preexisting business relationships in the industry..

"There is no question that New Jersey law protects both contracts and prospective business relationships from tortious interference." Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 79 (App. Div. 2004) (quoting Van Natta Mech. Corp. v. Di Staulo, 277 N.J. Super. 175, 182 (App. Div. 1994)). However, "it is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." Id. (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 752 (1989)); see Van Natta, 277 N.J. Super. at 182; Silvestre v. Bell Atlantic Corp., 973 F. Supp. 475, 486 (D.N.J. 1997)(holding that "[a] tortious interference with contract claim can be waged only against a third-party who is not a party to the contractual or economic relationship at issue."), aff'd 156 F.3d 1225 (3d Cir. 1998).

22

In the instant matter, Plaintiffs allege interference with prospective business advantage arising from a relationship between Plaintiffs and Jones Apparel Group and G-iii. Although the aim of the joint business venture is to secure business from these entities, they are not parties to the joint business venture at issue. Plaintiffs adequately allege the existence, subsequent destruction and damage as a result of Defendants' alleged interference with this preexisting relationship. Therefore, the Court declines to dismiss Plaintiffs' claim for tortious interference with prospective economic advantage. On this ground, Defendants' motion to dismiss is **denied**.

        e.        Count X - John Does (1-5)/Count XI - ABC Corporations (1-5)

Defendants assert that Counts X and XI should be dismissed because the Complaint fails to allege facts against the John Does and alleged fictitious corporations, and Defendants move for dismissal because of lack of specificity pursuant to Fed. R. Civ. P. 9. "The use of fictitious defendants is permitted until the plaintiff has had an opportunity to conduct discovery." Hardy v. N.J. Dep't of Corr., 2009 U.S. Dist. LEXIS 69036, *2-3 (D.N.J. Aug. 7, 2009); see White v. Fauver, 19 F. Supp. 2d 305, 312 n.8 (D.N.J. 1998). "[F]ictitious parties must eventually be dismissed, if discovery yields no identities." Id. (quoting Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998)). However, "[t]he rule is not always available[.]. To invoke the rule, the fictitious name in the complaint must have been accompanied by an appropriate description sufficient to identify the defendant." Coursey v. City of Camden, 2008 U.S. Dist. LEXIS 104454, *6 (D.N.J. Dec. 15, 2008) (citing Rutkowski v. Liberty Mut. Ins. Co., 209 N.J. Super. 140 (App. Div. 1986)). The Complaint does not contain appropriate descriptions of the alleged fictitious entities or individuals or the particular misconduct alleged to be actionable. On this ground, Defendants' motion is **granted.** With respect to Counts X and XI, Plaintiffs' Complaint is **dismissed**.

23

f.      Piercing the Corporate Veil

Defendants move to dismiss claims against Defendants Won Bok Choi and Misuk Bok Choi in their individual capacities.  In support of this motion, Defendants assert that Plaintiffs have not alleged grounds for piercing the corporate veil.  Plaintiffs assert that Defendants commingled funds, as in personal and business, and Defendants inadequately capitalized their corporation, therefore, piercing the corporate veil is warranted.  Further, Plaintiffs also assert that "it is the same facts supporting the fraud in the inducement claim which represent the wrong justifying piercing the corporate veil."  In support of this argument, Plaintiffs reference exhibits attached to the declaration submitted in support of this motion.[6]

Although the Complaint adequately alleges a potentially viable claim for fraud, the Complaint fails to allege, in accordance with the heightened pleading standard of Fed. R. Civ. P. 9, "how any of the[ ] [Defendants] abused the corporate form to perpetrate fraud or injustice." Capital Inv. Funding, LLC v. Lancaster Res., Inc., 2009 U.S. Dist. LEXIS 51809, *15 (D.N.J. June 19, 2009) (citing State Dep't of Environ. Protection v. Ventron Corp., 94 N.J. 473, 500-01 (1983).  Moreover, regardless of whether Plaintiffs have a viable claim for fraud in the inducement, the Complaint purports only to assert a claim for common law fraud. On this ground, Defendants' motion is **granted.**  Therefore, insofar as the Complaint names Won Bok Choi and Misuk Choi in their individual capacities as Defendants, the Complaint is **dismissed**.

---

6

The Court declines to consider exhibits or other material outside of the contours of the Complaint.  The parties have not requested that the Court take judicial notice of any particular document.  In the absence of such a request, expansion beyond the pleading converts this motion to dismiss into a motion for summary judgment.  See Fed. R. Civ. P. 12(d).

g.      Thomas Hill USA Co., Inc.

Defendants move to dismiss named Defendant Thomas Hill USA Co., Inc. because Defendants allege that the Complaint is devoid of allegations against this entity.  Plaintiffs' make no opposition on this ground. The Complaint is devoid of allegations directly concerning Defendant Thomas Hill USA Co., Inc.  On this ground, Defendants' motion is **granted.**  Therefore, Plaintiffs' Complaint is **dismissed** with respect to named Defendant Thomas Hill USA Co., Inc.

C.      Motion to Dismiss for Lack of Personal Jurisdiction

On November 4, 2009, Defendants filed a motion dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  On January 4, 2010 Defendants filed a separate motion to dismiss for lack of in personam jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

A"defense of lack of personal jurisdiction, is controlled by the stringent waiver provision of Rule 12(h)." Myers v. American Dental Assoc., 695 F.2d 716, 721 (3d Cir. 1982).  "A party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h). Pursuant to Fed. R. Civ. P. 12(g)(2), "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Id.

The defense of personal jurisdiction was available to Defendants when the initial motion to dismiss was filed.  Therefore, in accordance with Fed. R. Civ. P. 12(g), Defendants omission constitutes waiver of personal jurisdiction.  Defendants motion to dismiss for lack of personal jurisdiction is **denied.**

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is **denied**; Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is **granted in part** with respect to Defendant Thomas Hill USA Co., Inc., with respect to Defendants Won Bok Choi and Misuk Choi in their individual capacities only and with respect Counts I,  X and XI, and the motion to dismiss for failure to state a claim is **denied in part** with respect to Counts II, III, VI, VII and VIII; and Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is **denied.**  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh         
Dennis M. Cavanaugh, U.S.D.J.

Dated:         May  26   ,  2010
Original:      Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File

26